Terry **VORE,** Gerald Wray, Carol Shanafelt, et al., Plaintiffs–Appellants,

v.

**INDIANA BELL TELEPHONE COMPANY, INCORPORATED,** Defendant–Appellee.

No. 93–3706.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1994.

Decided Aug. 18, 1994.

Michael F. DeBoni, Patrick F. O'Leary (argued), Yoder, Ainlay, Ulmer & Buckingham, Goshen, IN, for plaintiffs-appellants.

R. Anthony Prather (argued), Indiana Bell Telephone Co., Indianapolis, IN, for defendant-appellee.

Before BAUER, WOOD, and CUDAHY, Circuit Judges.

BAUER, Circuit Judge.

■ Federal law provides that an employee is to be free from racial discrimination in the workplace, which includes freedom from a racially-hostile work environment. It does not guarantee a utopian workplace, or even a pleasant one. If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated. In short, personality conflicts between employees are not the business of the federal courts.

Terry Vore, Gerald Wray, Carol Shanafelt, and Dale Lovitt are former employees of Indiana Bell Telephone Company; they served as management personnel. Karon Coburn and Sally Scott–Niemier are current Indiana Bell employees who work in a non-management capacity. These employees, all of them white, claim that their employer discriminated against them by permitting a hostile work environment. These white employees alleged that the source of this hostility was a vulgar, loudmouth coworker, who happened to be the only black employee among them. They claim that Indiana Bell permitted this coworker to perform his disruptive antics (at their expense) because of their respective races and brought this action pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. The district court granted Indiana Bell's motion for summary judgment. Because we find no cognizable claim of racial discrimination, we affirm.

■ We review a district court's grant of summary judgment *de novo* to determine whether the record reveals that there is no genuine issue as to any material fact and Indiana Bell is entitled to a judgment as a matter of law. *See Hartford v. Chicago Housing Authority*, 12 F.3d 92 (7th Cir. 1993). In addition, we view the record and draw all inferences from it in the light most favorable to the white employees. Our consideration of the facts of this case is constrained, however, by the applicable statutes of limitations.

■ The statute of limitations with respect to Title VII claims is 300 days, calculated from the date the claim is filed with the Equal Employment Opportunity Commission. Here, the Title VII claim was filed

with the EEOC on June 24, 1992; for our Title VII analysis, then, we consider allegations of discriminatory conduct that transpired between August 29, 1991, and June 24, 1992. Section 1981 claims have a two-year statute of limitations period, calculated from the date of the filing of the complaint. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); Ind.Code 34–1–2–2. In this context, we consider conduct that transpired between September 3, 1990, and September 2, 1992, the date the complaint was filed. For the sake of simplicity and because it does not impact our Title VII analysis, we include in our recitation of the facts and application of the law conduct that transpired within the relevant section 1981 period.

Throughout the relevant period, Indiana Bell employed Bob Weymon, who is black, as a planning engineer in its South Bend, Indiana office; he was the only black engineer in his department. Weymon and the white employees worked in semi-private carrels, several to a large room, in reasonably close proximity to one another. By all accounts, Weymon was a disagreeable sort. In their complaint, the white employees allege that Weymon harassed everyone in sight; they claim that he physically threatened his coworkers, engaged in loud, angry tirades (typically directed at his computer terminal), yelled obscenities, stood atop his desk, played his radio at loud and disruptive levels, and used foul and vulgar language, which he often directed at female employees. According to the white employees, however, nothing in Weymon's behavior indicated any sort of racial animus.

During the relevant period, the white employees made several complaints to Indiana Bell management higher in the organization than the management levels occupied by Vore, Shanafelt, Wray and Lovitt. In response to these complaints about Weymon, Indiana Bell downgraded Weymon in his performance appraisal for 1990 (conducted in 1991) and reduced his salary opportunities. In addition, on October 8, 1991, Scott–Niemier, along with Coburn and other non-management employees, filed a grievance with their union complaining of a September 25, 1991, incident in which Weymon subjected them to "a barrage of foul language, including words unacceptable in any office or public setting." Indiana Bell responded to this grievance by admonishing him to refrain from using foul language.

The white employees made other complaints, all verbal and informal, to management regarding Weymon's conduct. During this relevant period, Indiana Bell had an Equal Employment Opportunity policy addressing racial harassment, and it periodically published a booklet informing employees of their EEO rights. While the white employees acknowledge that they were aware of the policy regarding harassment and received the published literature, they never contacted Indiana Bell's EEO coordinator regarding Weymon's behavior or filed an official EEO complaint.

An issue in dispute is Wray's superior's response to Wray's complaint in 1991 that Weymon had physically threatened him. The white employees claim that the superior declined action because he feared Weymon might file an EEOC complaint. Indiana Bell's version is that, in his deposition, Wray states that he inferred from the superior's refusal to act that the superior feared that Weymon would file an EEOC complaint if disciplined. The record supports Indiana Bell's interpretation, but we will view the incident according to the version given by the white employees because it does not alter our analysis.

■ Title VII provides redress to employees subject to a hostile work environment as the result of racial harassment of fellow employees. *See, e.g., Rogers v. Western–Southern Life Ins. Co.*, 12 F.3d 668, 673 (7th Cir.1993). Title VII provides in pertinent part:

It shall be an unlawful employment practice for an employer—to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). The white employees admit that theirs is not the typical case in which Title VII is violated because an employee is subjected to a hostile work environment. In the typical cases, the question is whether the quantity, frequency, and severity of the racial, ethnic, or sexist slurs create a work environment so hostile as to discriminate against the minority employee. For example, in *Daniels v. Essex Group, Inc.*, 937 F.2d 1264 (7th Cir.1991), a black employee was subjected to "nigger" jokes and racially hostile graffiti specifically invoking the Ku Klux Klan, and witnessed a battered, bloody black dummy hung from a doorway. *Daniels* is indicative of the type of case in which the work environment is considered hostile because of the obvious racial, ethnic, or sexual animus. But, as the white employees admit, Weymon's behavior demonstrated no racial animus. He did not mistreat only whites; he mistreated everyone. Weymon was an equal opportunity pain.

■ Because of this obvious lack of racial animus on Weymon's part, the white employees attempt to persuade us that their scenario fits the Title VII hostile work environment paradigm in a different way. They argue that Indiana Bell demonstrated disparate treatment of its black and white employees because it would have dealt more harshly with a misbehaving white employee surrounded by black employees. This argument is severely flawed.

First, this is an impossible statement to prove. There is no parallel set of employees whose racial make-up is reversed. Nor is there a shred of evidence offered by the white employees that Indiana Bell has a policy or practice favoring blacks over whites or that it has done so in analogous situations. The white employees respond to this challenge by claiming that they know Indiana Bell would have acted differently had the racial composition been reversed because Wray's superior admitted that he refused to discipline Weymon out of fear of an EEOC complaint. Wray's superior's statement demonstrates no such thing.

We cannot vilify every employer that exercises caution in the handling of delicate employment situations where race might factor.

It very well might have been that Wray's superior thought the problem little more than a personality conflict, or that Wray initiated the confrontation with Weymon. Whatever its reasons, Indiana Bell's refusal to discipline Weymon for that one incident, even if done out of fear of an EEOC complaint, does not imply that it intentionally inflicted this suffering on the white employees solely because of their race.

■ Second, to state a claim cognizable under Title VII, the employer must tangibly discriminate against an employee on the basis of race. The employee, then, must point to incidents of mistreatment by the employer. The white employees have not alleged that Indiana Bell has mistreated any of them in any manner on account of their race, including subjecting them to Weymon.

Even in the few cases cited by the white employees in which employees (who are also white) have stated valid Title VII claims, the employer has treated the affected employee more harshly in some direct way. In *Flanagan v. A.E. Henry Community Health Servs. Ctr.*, 876 F.2d 1231 (5th Cir.1989), a white physician in an all-black clinic was more harshly reprimanded for conduct similar to that of black coworkers and was ultimately discharged. In *Jones v. Ohio Dep't of Mental Health*, 687 F.Supp. 1169 (S.D.Ohio 1987), a white employee proved he was discharged solely to insulate the department from an EEOC charge by a black employee fired previously. In these cases, the employer mistreated the employee in an active and direct manner. This is not the case with respect to Indiana Bell's treatment of the white employees.

Our analysis, then, demonstrates that Title VII is not implicated by the nebulous claim that Indiana Bell discriminated against white employees by permitting an unpleasant black employee to work with them. Hence, we are left with an unpleasant working environment in which one lout, who happens to be black, greatly annoys his coworkers, who happen to be white. Without racial animus, there is no Title VII claim. Consequently, the district

court's order granting summary judgment to Indiana Bell is

AFFIRMED.