RIPPLE, Circuit Judge.
Jane Doe had been employed by R.R. Don-nelley & Sons Co. (“Donnelley”) in its printing and binding pubhshing facility in Craw-fordsville, Indiana since 1983. After a period of intermittent, part-time employment, Ms. Doe worked full-time, from April 1985 until *441 late December 1989, in the North Plant bindery, where she packaged and shipped her department’s manufactured products. Charles Stewart was her supervisor during this time; he had authority over promotions. Ms. Doe alleges that Stewart made sexually harassing comments during that four-year period including: (1) commenting on her clothing; (2) asking her what she wore to the gym and at home and how she looked in the clothing; (3) commenting that she looked attractive and had lost weight; (4) patting her posterior on two occasions; (5) telling her at her annual evaluation never to have an affair at Donnelley because “it’s not worth it; someone will always get burned.” Ms. Doe never reported the incidents to another Don-nelley manager or supervisor.
In late December of 1989, Ms. Doe was promoted to a production expediter position in the printing plate-making area located in the company’s South Plant. At this point, Ms. Doe’s contact with Mr. Stewart ceased. However, according to her complaint, harassment from co-workers began. On July 10, 1991, in a meeting concerning her discipline for tardiness with Donnelley’s Human Resources Supervisor Anthony Malandro, Ms. Doe stated that co-worker Curt Buethe had left voice-mail messages for her in which he simulated heavy breathing. Mr. Malandro investigated the complaint. Despite Mr. Buethe’s denial that he made such calls, Mr. Malandro placed an adverse notation in Buethe’s personnel file and reminded Buethe that sexually harassing behavior was contrary to company policy.
Other incidents of sexual harassment were recounted in her complaint and at her deposition in this suit.[1] These incidents included: (1) beginning in early 1991 (approximately one year after Ms. Doe’s transfer), a co-worker’s repeated inquiries about her breast size; (2) from July 1992 until September 1992, a co-worker’s statement that he liked to look at Ms. Doe’s breasts; (3) somewhere between 1991 and September 1992, a co-worker’s inquiry as to the type of lingerie Ms. Doe owned, and as to whether she tanned nude; (4) between October 1991 and September 1992, a co-worker’s asking her on a date 5-10 times and giving her a note that explained various terms involving sexual intercourse; (5) in 1990, 1991 or 1992, a coworker’s asking Ms. Doe to have a drink and to go to a motel, and repeatedly requesting sexual intercourse; (6) from 1990 until her rape, a co-worker’s repeated hugs and attempts to kiss her. Ms. Doe never reported these incidents to any Donnelley manager or supervisor. She, alleges, however, that some of the harassment occurred in the view of Donnelley supervisors.
The complaint also alleges that, on September 10, 1992, Ms. Doe was raped on Donnelley’s premises by an unknown assailant. Although the incident was reported to a police department in another part of the state, the alleged rape was not reported to the local authorities until three months after it had occurred. Donnelley did not know of the incident until informed of it by the plaintiffs attorney at the time that it was reported to the local authorities.
I.

BACKGROUND

A. District Court Proceedings
Ms. Doe and her husband brought a four-count claim of sexual harassment in April of 1993. Liability was premised on hostile environment and quid pro quo employment discrimination under Title VII. Common law negligence and loss of consortium under state law were also alleged. The district court dismissed the negligence and loss of consortium claims, and granted summary judgment on the two sexual discrimination claims, 843 F.Supp. 1278. Because Ms. Doe’s appeal is limited to the hostile environment *442 issue, we shall limit our more extensive discussion to the district court’s treatment of that issue.
Relying on our decisions in Weiss v. Coca-Cola Bottling Co., 990 F.2d 333 (7th Cir.1993) and Saxton v. American Telephone & Telegraph Co., 10 F.3d 526 (7th Cir.1993), the district court first addressed the incidents that had taken place while Ms. Doe was working for Mr. Stewart in the North Plant and the “heavy breathing” incident involving Mr. Buethe during Ms. Doe’s time at the South Plant. The court determined that these incidents, even if proven, would not rise to the level of actionable sexual harassment. The other incidents were regarded by the district court as more serious. However, the district court decided that the issue of liability with respect to these incidents turned not on whether they were sufficiently serious to rise to the level of a violation but on whether Donnelley was aware of the harassment and failed to take appropriate action with respect to it. Upon examination of the record before it, the district court concluded that no material issue of fact existed as to whether Ms. Doe had brought any of the alleged instances of misbehavior on the part of her co-workers to the attention of Donnelley. The court noted that absence of notice to the employer does not necessarily insulate the employer from liability. Nor does the existence of a grievance procedure and a policy against discrimination necessarily preclude a finding of liability. However, the court was of the view that, in this case, it was necessary that Donnelley have some notice or knowledge of liability in order to sustain the allegation of harassment against the company.
B. Submissions of the Parties on Appeal
Ms. Doe first takes issue with the district court’s determination that the alleged incidents involving Mr. Stewart were not sufficiently serious to constitute sexual harassment. With respect to the conduct of fellow workers, she notes that the incidents were numerous and serious. The incidents were so pervasive, she continues, that the employer ought be held to constructive knowledge of them. The supervisors who did have knowledge of the incidents were line supervisors, and the company ought not be allowed to insulate itself from their knowledge of the conduct. There was no showing, she also declares, that she ever was informed of the anti-harassment policy of Donnelley. She did not report the incidents, she contends, because she did not know that she could do so. The record is “sketchy,” she submits, as to the means employed by the employer to advise the employees of the anti-harassment policy. She also notes that the record contains her allegations that her husband reported several of these matters to two Don-nelley supervisors. Ms. Doe also suggests, albeit rather obliquely, that the incidents with Mr. Stewart are linked to the incidents with her fellow employees and therefore constitute a continual violation of the law.
Donnelley counters that the alleged incidents while Ms. Doe was working for Mr. Stewart are time-barred because no charge was filed during the requisite 300-day period. In the alternative, the company contends that the district court was correct in its ruling that the conduct of Stewart was not actionable. With respect to the acts of the other employees at the South Plant, Donnel-ley denies liability because it was never informed of them. Nor does Donnelley believe that it can be held liable on the theory that the acts were so pervasive that the company had to be on constructive notice of the incidents. Donnelley also submits that the plaintiff’s alleged lack of knowledge of the company’s policy against sexual harassment and its grievance procedure does not alter the company’s legal liability. Donnelley contends that the plaintiff was aware of the policy against sexual harassment at the time of her report of the Buethe incident in July 1991. Further, Donnelley states that she was aware of the company’s grievance procedure after May 1990 when she was disciplined for tardiness. This date was before the majority of the alleged incidents in the South Plant. Finally, the company also points out that it had no knowledge of the alleged rape until it was reported to the company by the plaintiffs lawyer three months after the incident occurred. There is no evidence of record that the rapist was in any way connected with the company.
*443 II.

DISCUSSION

At the beginning of our analysis of the ease, we pause to set forth in summary fashion the procedural and substantive standards that must guide our analysis.
A. Standards Governing Summary Judgment
The standards that govern the district court’s consideration of a motion for summary judgment are well settled. We repeat them again because they are extremely important in the adjudication of this case. Under Federal Rule of Civil Procedure 56(c), summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” As the district court explicitly noted, in ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). The burden rests squarely with the party moving for summary judgment to demonstrate that there is an absence of evidence to support the nonmoving party’s case. Celotex Corp. v. Catrett, 477 U.S. 317, 325,106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). If there is doubt about the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment ought to be denied. See Wolf v. Fitchburg, 870 F.2d 1327, 1330 (7th Cir.1989). On the other hand, summary judgment must be entered “against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.” Celotex Corp., 477 U.S. at 322, 106 S.Ct. at 2552. In this respect, the nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir.1994); Roger v. Yellow Freight Sys., Inc., 21 F.3d 146, 148 (7th Cir.1994). A “metaphysical doubt” with respect to the existence of a genuine issue of triable fact is not enough to preclude summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).
When, as here, we review the grant of summary judgment in a discrimination ease, we apply these criteria with added scrutiny because matters of intent and credibility are crucial issues. See Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993).
B. Standards Governing Sexual Harassment Claims
In Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court, speaking through now-Chief Justice Rehnquist, squarely held that Title VII’s prohibition against discrimination on the basis of sex protected a worker against an employer who perpetrates or permits unwelcome sexual advances that create an offensive or hostile working environment. Id. at 64, 106 S.Ct. at 2404. This protection extends not only to the “tangible” economic aspects of employment but also to the psychological aspects of the workplace environment. The Court explicitly recognized that such harassment need not be linked to an economic quid pro quo; rather, it encompasses all forms of conduct that unreasonably interfere with an individual’s work performance or creates an intimidating, hostile, or offensive working environment. Id. The Court also noted, however, that not all conduct that has sexual overtones can be characterized as the sort of sexual harassment that is forbidden by the statute. For the harassment to be actionable, it must be sufficiently severe or pervasive as to alter the conditions of the victim’s employment and to create an abusive working atmosphere. Id. at 67, 106 S.Ct. at 2405-06. More recently, in Harris v. Forklift Systems, Inc., — U.S. - — , 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Court, this time through the pen of Justice O’Con-nor, reaffirmed that standard and noted that *444 concrete psychological harm is not a necessary predicate to maintain a cause of action. Id. at-, 114 S.Ct. at 370-71. Moreover, the conduct in question is to be judged by both an objective and a subjective standard. The statute protects the worker against conduct a reasonable person might find hostile or abusive. However, if the victim does not subjectively regard the environment as abusive, the conduct has not actually altered the victim’s employment and there is accordingly no Title VII violation. Id. at -, 114 S.Ct. at 370. Noting that this approach is not susceptible to a “mathematically precise” test, the Court held that the required determination can be made only by evaluating all of the circumstances — the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the worker’s performance.
The caselaw of this circuit has applied these governing principles to a variety of circumstances and, in the process, has provided additional guidance for our decision today. In a comprehensive review of this area, this court’s opinion in Dey v. Colt Construction & Development Co., 28 F.3d 1446 (7th Cir.1994), addressed both the objective and subjective aspects of the approach outlined by the Supreme Court in Harris. With respect to the objective component, the court, Judge Rovner writing, noted that our caselaw has held that isolated and innocuous incidents will not support a hostile environment claim.[2] As our Chief Judge wrote recently, “Title VII is not directed against unpleasantness per se but only ... against discrimination in the conditions of employment.” Carr v. Allison Gas Turbine Div., Gen. Motors Corp., 32 F.3d 1007, 1009 (7th Cir.1994). At the same time, we have cautioned that, in evaluating the situation, a court must be careful to evaluate the “isolated” incidents cumulatively in order to obtain a realistic view of the work environment.[3] With respect to the subjective element of the test, we emphasized that the statutory protection extends to the worker “who has the dedication and fortitude to complete her assigned tasks even in the face of offensive and abusive sexual banter.” Dey, 28 F.3d at 1454. Noting our agreement with our colleagues in the Federal Circuit, we held that the standard is not what a reasonable person might be capable of enduring but whether the offensive acts alter the conditions of employment. Id. at 1455 (citing King v. Hillen, 21 F.3d 1572, 1583 (Fed.Cir.1994)).
*445 C. Application to this Case
1.
We turn first to the conduct alleged at the North Plant where the plaintiff worked under the supervision of Charles Stewart. In her complaint, the plaintiff alleged that Stewart made certain remarks and engaged in offensive touching of her person on two occasions.[4] Whether sexual harassment by a supervisor can be imputed to the employer corporation is governed by the principles of agency. Meritor, 477 U.S. at 72, 106 S.Ct. at 2408; see also Volk v. Coler, 845 F.2d 1422, 1436 (7th Cir.1988); North v. Madison Area Ass’n for Retarded Citizens-Developmental Ctrs. Corp., 844 F.2d 401, 407 (7th Cir.1988).
In the view of the district court, Stewart’s conduct did not rise to the level of a violation of Title VII. Upon review of the caselaw of the circuit, it appears that the nature of the incidents alleged here, at least when viewed in isolation, is similar to the type- that we have held not sufficient to support a cause of action under Title VII for sexual harassment. However, the summary judgment record before us suggests that the conduct persisted for a lengthy period of time and that, during that period, was a pervasive aspect of the plaintiffs employment. We therefore have serious reservations as to whether it was appropriate for the district court to hold as a matter of law that Stewart’s conduct was not actionable. As in the case of racial harassment in the workplace, there is no “magic number” of incidents that give rise to a cause of action. See Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 674 (7th Cir.1993). As Justice O’Connor admonished in Harris, the matter is simply not susceptible to a mathematically precise test.
Even if the alleged activities of Mr. Stewart were sufficient to support a cause of action, we must conclude that the plaintiff could not maintain a cause of action based on Stewart’s conduct because her complaint was not timely. The plaintiff filed her charge with the EEOC on January 4, 1993. The last of Stewart’s alleged acts of harassment took place in December 1989. After that time, Ms. Doe had been transferred to the South Plant and her contact with Stewart ceased. In a deferral state, such as Indiana, a charge must be filed within 300 days of the occurrence of the act that is the basis of the complaint. 42 U.S.C. § 2000e-5(e)(1); see Nazaire v. Trans World Airlines, Inc., 807 F.2d 1372, 1379 (7th Cir.1986), cert. denied, 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987).[5] Nor do we believe that this problem can be avoided by resorting to the continuing violation doctrine. “The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period.” Selan v. Kiley, 969 F.2d 560, 564 (7th Cir.1992). In Selan, we outlined several viable continuing violation theories in continuing violation cases. Id. at 565. Only one is relevant in the factual situation that we have before us: We have recognized that a plaintiff may charge that the employer has, for a period of time, followed a practice of discrimination *446 (here the toleration of sexual harassment of female employees), but has done so covertly rather than in an open and notorious way. There are several problems with the application of this approach to the situation facing us in this case. As we noted in Selan, the purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred. Moskowitz v. Trustees of Purdue Univ., 5 F.3d 279, 282 (7th Cir.1993); see also Martin v. Nannie & Newborns, Inc., 3 F.3d 1410, 1415 n. 6 (10th Cir.1993) (noting that the continuing violation theory is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his rights have been violated).
Ms. Doe, under her own theory of the case, was aware of the nature of Stewart’s conduct as it occurred. Further, she has not established that she was unaware that it was possible to seek redress for such conduct. Ms. Doe stated in her deposition that she was aware of the internal grievance procedure at Donnelley as early as May 1990, and that she chose not to file any complaints. (Tr. I at 157-68). Additionally, Ms. Doe admitted at deposition that Donnelley had posted a policy prohibiting sexual harassment and that she did not take advantage of the policy. (Tr. I at 270). See swpra note 5. Moreover, to establish such a serial violation, the plaintiff must demonstrate that the defendant’s acts were “related closely enough to constitute a continuing violation” and not “merely discrete, isolated, and completed acts which must be regarded as individual violations.” Berry v. Board of Supervisors of L.S.U., 715 F.2d 971, 981 (5th Cir.1983); accord Moskowitz, 5 F.3d at 281 (7th Cir.1993). Here, we do not believe that the plaintiff has shown that there is a sufficiently close nexus between the conduct of Stewart at the North Plant and the later conduct of fellow employees at the South Plant to permit the characterization of a “continuous violation.” Most fundamentally, as we discuss in the following section of this opinion, because no harassment event occurring during the violation period was ever brought to the attention of Donnelley while Ms. Doe was still employed, there is no violation during the limitation period that can serve as the anchor for the earlier conduct.[6] See Purrington v. University of Utah, 996 F.2d 1025, 1028 (10th Cir.1993) (noting that in a continuing violation case, one of the acts must fall within the limitations period).
2.
We now turn to the alleged sexual harassment during the appellant’s tenure in the South Plant. Here, we are, of course, required to decide the case on the basis of the record and in light of the responsibilities of the respective parties on summary judgment. At the outset, we again must point out that, as the Supreme Court emphasized in Meritor, employers are not absolutely liable for workplace harassment. 477 U.S. at 72, 106 S.Ct. at 2408. Therefore, at least as a general proposition, an employer is not responsible for the conduct of co-workers. “It would be unrealistic to expect management to be aware of every impropriety committed by every low-level employee.” Carr, 32 F.3d at 1009. Rather, the employer is liable only if it knew, or should have known of the employees’ acts and failed to take appropriate remedial action. Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 320 (7th Cir.1992); accord Guess v. Bethlehem Steel Corp., 913 F.2d 463, 465 (7th Cir.1990); Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1421 (7th Cir.1986). Employer liability is based on the application of the common-law rules of agency. Meritor, 477 U.S. at 72, 106 S.Ct. at 2408. Knowledge of the agent is imputed to the corporate principal only if the agent receives the knowledge while acting within the scope of the agent’s authority and when the knowledge concerns a matter within the scope of that authority. Juarez, 957 F.2d at 321. Moreover, the agent must have a duty to speak with respect to the specific item of knowledge. Id.
*447 One of the incidents that did occur within the time period admittedly covered by the complaint was the placing of several “heavy breathing” messages on the appellant’s voice mail by a co-worker. The company became aware of this incident when it was reported by Ms. Doe during a meeting with the plant’s human resources supervisor to discuss the discipline imposed upon the plaintiff for tardiness. The record discloses that the company promptly investigated this complaint and disciplined the perpetrator.
The other incidents of sexual harassment by co-workers were not reported by the plaintiff to Donnelley. It appears that the company was given no formal notification of them until her complaint was filed with the district court. With respect to several of the instances, the plaintiff contends that management must have been aware of their occurrence. We have examined the record in detail and shall discuss those instances which raise even a suggestion that the defendant may have been constructively notified of the instance because it was witnessed by an employee in a supervisory capacity.[7]
The plaintiff suggests that the repetitive attempts of co-worker Ron Brown to hug her were witnessed by a supervisor. Although the record is not explicit on the matter, it appears that the supervisor in question was the supervisor of the plaintiff, Brown or both of them. It is not at all clear, on the record before us, however, that the supervisor actually witnessed the conduct or, just as importantly, the frequency with which he witnessed the conduct. We do not have the evidence of that supervisor, only the plaintiff’s opinion that he saw it. To the extent that this conduct continued after the Buethe incident, the plaintiff never reported the incident to management, even though she was aware of the company’s policy against sexual harassment and of the company’s willingness to take action.[8] Moreover, it is not at all clear on this record that the incident in question (the supervisor’s toleration of Brown’s attempt to hug the plaintiff) would, under the existing caselaw of this circuit, amount to sexual harassment. Although it is possible for sexual harassment to reach a level at which it can be presumed that the supervisor must have been aware that a hostile working environment existed, see Hall v. Gus Constr. Co., 842 F.2d 1010, 1014-15 (8th Cir.1988), our review of the record in this ease makes it apparent that such a showing has not been made here.
The plaintiff also notes that her husband attempted to intervene on her behalf. Other than alleging that her husband had told her that the supervisors with whom he had spoken indicated that the matter was properly resolved between Ms. Doe and them, the plaintiff was unable to testify to the substance of the conversations. The deposition of the husband was never made a part of the record. Although Donnelley attempted to supplement the record on appeal to include this document, Ms. Doe, through her counsel, opposed that motion and the district court subsequently denied it. Under these circumstances, Ms. Doe cannot rely on the contents of this document at this point in the litigation.
3.
Ms. Doe alleges serious incidents of sexual harassment. This case comes to us, however, on appeal from the grant of summary judgment, and we must evaluate the ease on that basis. Like the district court, we can rule only on the basis of what is in the record before us — a record that was made by the parties in the district court. This case, like so many other cases that come before us on *448 appeal from the grant of a summary judgment, brings with it a record that can be charitably characterized as “undernourished.” The standards established by the Supreme Court that we have set forth above have been repeated time and time again in our reported decisions, and we must expect that the parties will live up to the obligations imposed by those decisions by making an adequate record in the district court. Cases such as this one are won by attention to detail and completeness in the litigation of the summary judgment motion in the district court; they cannot be won in this court when the appropriate record has not been made. On this record, the district court had no choice but to grant Donnelley’s motion for summary judgment. We, bound by that same record, also have no choice but to affirm the judgment.
Conclusion
For the reasons set forth in this opinion, we must affirm the judgment of the district court.
AFFIRMED.

. It is unclear whether these instances were brought to the attention of the EEOC in the original administrative charge. That document has not been made a part of the appellate record by either party. As a general rule, raising a particular claim at the administrative level is a condition precedent to raising the matter in subsequent litigation. Babrocky v. Jewel Food Co., 773 F.2d 857, 864 (7th Cir.1985) (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)); see Kirk v. Federal Property Management Corp., 22 F.3d 135, 139 (7th Cir.1994).

. See Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 533-34 (7th Cir.1993) (holding that two incidents of misconduct by supervisor, each involving several remarks and impermissible touching, were insufficient to sustain liability); Rennie v. Dalton, 3 F.3d 1100, 1106-07 (7th Cir.1993), cert. denied, - U.S. -, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994) (holding that one off-color joke and a conversation about a strip bar not directed personally at the employee was insufficient to sustain a cause of action); Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir.1993) (holding that several incidents of unwanted touching, attempts to kiss, placing "I love you” signs in the work area, and asking the worker for dates did not amount to a hostile work environment); Scott v. Sears, Roebuck & Co., 798 F.2d 210, 213 (7th Cir.1986) (holding that lewd comments and slap on the posterior were insufficient basis for claim), overruled in part, Saxton, 10 F.3d at 533 ("Thus to the extent that our prior cases required proof that the harassment 'cause[d] such anxiety and debilitation to the plaintiff that working conditions were poisoned,’ they have been overruled.").

. Vore v. Indiana Bell Tel. Co., 32 F.3d 1161, 1163 (7th Cir.1994) (reaffirming doctrine that in "typical cases, the question is whether the quantity, frequency, and severity of the ... slurs create” a hostile work environment); Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1456 (7th Cir.1994) (finding that consistent pattern of comments sustains hostile environment claim); Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1132 (7th Cir.1994) (holding that frequent use of racial epithets was intolerable and enough to create a hostile environment); Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir.1993) (holding that cumulative weight of several "isolated” racial comments must be considered by the court); Daniels v. Essex Group, Inc., 937 F.2d 1264, 1270-75 (7th Cir.1991) (concluding that pervasive pattern of racial slurs, graffiti and jokes were sufficient to sustain a hostile environment claim); Brooms v. Regal Tube Co., 881 F.2d 412, 420 (7th Cir.1989) (holding that repeated instances of offensive conduct would constitute a hostile environment) (relying on Rabidue v. Osceola Refining Co., 805 F.2d 611, 620 (6th Cir. 1986) ("sexually hostile or intimidating environments are characterized by multiple and varied combinations and frequencies of offensive exposures. ...”)).

. In Ms. Doe’s deposition, she specifically alleged that Supervisor Stewart consistently made comments about how her clothes fit and in what types of clothing he would like to see her dressed. Further, Supervisor Stewart would call Ms. Doe into his office specifically to comment on her physical attributes. (Tr. I at 61-8). Lastly, Supervisor Stewart patted Ms. Doe on the posterior on a number of occasions. (Tr. I at 96).

. Ms. Doe's attempt to argue that she ought to be excused from timely filing because Donnelley did not post a notice advising its employees of their rights under the employment discrimination laws, see 42 U.S.C. § 2000e-10, cannot be sustained. The record will not support the argument that there is a genuine issue of triable fact with respect to whether Donnelley fulfilled its obligation in that regard. Although Mr. Malan-dro, the Human Resources Supervisor, appended a later version of Donnelley's policy to his affidavit, that document makes it quite clear that there was an earlier version. Indeed, Ms. Doe admitted the existence of such a policy as early as July 1991. There is simply no genuine issue of triable fact with respect to this question. Cf. Unterreiner v. Volkswagen of America, 8 F.3d 1206, 1210 (7th Cir.1993) (holding on facts more favorable to the plaintiff that a fact-finder could not reasonably infer from Unterreiner’s statements, taken as a whole, that the bulletin board had no ADEA notice).

. The alleged rape of September 10, 1992 was eventually reported to Donnelley by Ms. Doe's attorney in December of 1992, three months after Ms. Doe stopped working.

. In her reply brief, Ms. Doe asserts that, in reply to the interrogatories of Donnelley, she stated that she reported the offending behavior to her supervisors “repeatedly” and that no action was taken. She admits, however, that she was unable to recall these instances at her deposition. It is well established that a litigant cannot create a genuine issue of triable fact by pointing to difference in testimony in an interrogatory and at a deposition. Richardson v. Bonds, 860 F.2d 1427, 1433 (7th Cir.1988). Furthermore, Ms. Doe, through counsel, failed to include the interrogatory in her Designation of Pleading for Inclusion in Record on Appeal. (R. at 64). Thus, this court cannot consider her interrogatory because it is not contained in the record.

. Indeed, it appears that the plaintiff was aware that the supervisor in question had taken action at the time of the "heavy breathing” incident. (Tr. II at 69).