Delphine LYON–SCOTT,
Plaintiff–Appellant,

v.

John E. POTTER, Postmaster General,
United States Postal Service
Defendant–Appellee.

No. 01–1715.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 2002.

Decided June 20, 2002.

Before CUDAHY, COFFEY, and
WILLIAMS, Circuit Judges.

ORDER

Plaintiff Delphine Lyon–Scott is an African–American woman and a supervisor for the United States Postal Service. She appeals from an entry of summary judgment for the Postal Service on her claim that she was subject to a racially hostile work environment. Because Lyon–Scott did not proffer sufficient evidence that her workplace problems were racially motivated or that the Postal Service was negligent in its response to her concerns, we affirm the judgment below.

The facts here are not in serious dispute. In late 1995, Gregory Gnau began working as a mail carrier under Lyon–Scott's supervision. Gnau is Caucasian, and is acknowledged as having a mental impairment—autism. Previously, Gnau had conflicts with another supervisor, also an African–American woman, who recommended that the Postal Service not hire Gnau after his trial probationary employment period ended. Nonetheless, Gnau was given full employee status.

After Gnau was transferred to Lyon–Scott's unit, his insubordination continued. Lyon–Scott focuses on two major incidents. During the first incident, Gnau hit another employee with a piece of mail. Following Postal Service policy, Lyon–Scott counseled Gnau about this inappropriate behavior. Gnau apparently became quite agitated during this counseling ses-

sion, called Lyon–Scott a "black bitch," repeatedly uttered profanities, and briefly grabbed Lyon–Scott under her neck.[1] She and her supervisor (also African–American) then recommended that Gnau be fired because of this misconduct, but they were overruled by superiors after a union grievance was filed on Gnau's behalf. Pursuant to Gnau's union grievance, Gnau was warned that "any further such infractions would result in [his] removal from the postal service."

During the second incident, Lyon–Scott observed Gnau slacking off. She talked to Gnau about focusing on his work, and Gnau replied by making faces, pointing at Lyon–Scott, and making wild allegations that Lyon–Scott was a "racist motherfucker." After uttering other profanities and accusations, Gnau kicked a mail container until it was broken and then left the area. On his way out (apparently escorted by security), Gnau attempted to hit another Postal Supervisor who had intervened in the dispute. Soon after this incident, Lyon–Scott and her supervisor again recommended that Gnau be fired. For a short time, Gnau was indeed terminated. But, without discussing the matter with Lyon–Scott, the Postal Service considered overruling her (and her supervisor's) recommendation. Specifically, the Postal Service claimed that Gnau could not be fired because his autism had not been properly accommodated. However, Lyon–Scott pointedly notes that the employee relations manager who made this decision was quite deficient in her failure to ad-

dress Gnau's potential violence and his previous outbursts.

Admittedly facing a difficult choice set, the Postal Service ultimately decided to rescind Gnau's termination. Soon after, Gnau returned to work. This time, the Postal Service reassigned him to a different floor and to a different supervisor. After Gnau's return, Lyon–Scott saw him several times in her unit. During these occasions, Gnau appeared to be deliberately watching or staring at Lyon–Scott, even though he had no apparent reason to be on her floor. Although Lyon–Scott felt aggrieved by these incidents, she did not tell her superiors. After one staring incident, she claims that she suffered various physical and psychological problems and as a result took extended medical leave. While Lyon–Scott was on leave, Gnau was disruptive with yet another supervisor. After this incident, the Postal Service forced Gnau to resign in lieu of his termination for cause. Lyon–Scott then brought suit. The district court found for the Postal Service at summary judgment, because Lyon–Scott could not show (a) that Gnau's harassment was racially based or (b) the Postal Service's response to her complaints was negligent. Her appeal challenges both determinations.[2]

In order to prove her claim that the Postal Service maintained a racially hostile environment, Lyon–Scott must show that (1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was severe

---

1. We provide these details as background to Lyon–Scott's racially hostile environment claim. Because Lyon–Scott did not file a timely EEOC charge with regard to this incident, any claims based upon it are time-barred.

2. The Postal Service argues that Lyon–Scott's motion, which was timely filed pursuant to Federal Rule of Civil Procedure 59(e), was not

sufficiently detailed to toll the time for this appeal. However, we find that the timely motion, viewed generously and in context with the district court's summary judgment opinion and subsequent orders, was enough to toll Lyon–Scott's time to appeal. Thus, we have jurisdiction and resolve this case on the merits.

and pervasive so as to alter the conditions of her environment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *See, e.g., Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir.1998). The employer may be found liable for a hostile work environment created by the employee's coworkers only when the employee shows that her employer has "been negligent either in discovering or remedying the harassment." *Id.See also Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 809 (7th Cir.2000).

Applying the familiar standards set out in *Parkins* and other cases leads us to conclude that Lyon–Scott's claim fails because she cannot meet prongs (2) and (4) above. While we strongly disapprove of Gnau's alleged remarks and his erratic behavior toward Lyon–Scott, Lyon–Scott does not have evidence to dispute the Postal Service's determination that Gnau's belligerent behavior, in the context of his autism, was applied broadly across the workplace. To meet her burden at summary judgment, Lyon–Scott needed to show that race, and not some other reason, drove Gnau's behavior. This is because Title VII is not a general remedy for office environments plagued by an obnoxious employee's behavior, unless that behavior is targeted to individuals on the basis of their race or other protected characteristics. *See Vore v. Indiana Bell Telephone Co., Inc.,* 32 F.3d 1161, 1164 (7th Cir.1994). Lyon–Scott did not show that her race was the motivation for Gnau's behavior, rendering summary judgment appropriate on that basis alone.

But, even if we assume that Lyon–Scott could show that Gnau's harassment was because of her race, her claim against the Postal Service would still fail because she has failed to set forth material facts sufficient to show the Postal Service's negligence. The Postal Service ultimately presented an adequate response by: (a) assigning Gnau to a new supervisor; (b) providing him extensive work-related counseling and evaluation; (c) putting his doctor's accommodation measures in place; (d) placing him on a strict third-strike policy of employment; and (e) moving Gnau to a different floor. As to this last issue, Lyon–Scott did not complain about Gnau's lurking and staring, making the Postal Service's non-response to that problem a non-issue. Finally, when Gnau crossed the line again, he was forced to resign or be terminated. No reasonable jury could conclude that the Postal Service was negligent under these circumstances.

As the Postal Service candidly admits, Gnau proved to be "a problem employee in general [who] was prone to inappropriate outbursts and continual conflicts." Given the facts presented in this case, we understand Lyon–Scott's concern that the Postal Service's responses were far from perfect. But, Title VII does not guarantee perfection. Here, the district court properly found that Lyon–Scott did not show that disputed facts exist regarding Gnau's racial animus or the Postal Service's response to Gnau's behavior. Accordingly, the judgment below is AFFIRMED.