**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 12-3302
———

SHIRLEY FICHTER,
Appellant

v.

AMG RESOURCES CORPORATION

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:10-cv-00367)
District Judge: Honorable Terrence F. McVerry
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 11, 2013

Before: SCIRICA, HARDIMAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed:  June 12, 2013)
———

OPINION OF THE COURT
———

VAN ANTWERPEN, *Circuit Judge*.

Appellant Shirley Fichter ("Fichter") filed suit against defendant AMG Resources

Corporation ("AMG") claiming unlawful termination and gender discrimination due to a

hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq.* The District Court granted AMG's motion for summary judgment on both counts and Fichter appealed. For the reasons that follow, we will affirm the District Court's grant of AMG's motion for summary judgment.

## I.

Because we write solely for the parties, we briefly review only the essential facts. Defendant AMG markets and processes scrap metal. Fichter was responsible for AMG's scrap accounts payable, but previously worked in accounts receivable. In June 2008, over Fichter's objections, Gregory Cercone ("Cercone") was hired to assist Fichter, and she directed his daily operations. Fichter took nonwork medical leave from March 25, 2009 through May 31, 2009, and Cercone assumed her duties. During her leave, AMG's Chief Financial Officer and Fichter's supervisor, Brian Cohen ("Cohen"), advised Fichter that she would be reassigned to assist John Burstein ("Burstein") when she returned. Burstein was a scrap metal broker, and she was to assist him in accounts payable and receivable. Cohen advised Fichter that Cercone would take her position.

Fichter objected, requesting to remain in her position; however, she was the most qualified employee to assist Burstein and was ultimately reassigned. Her compensation and benefits remained unchanged. Fichter was responsible for collecting on unpaid accounts and other duties. Fichter testified that she believed Burstein's open accounts totaled a minimum of $500,000 and that her position was very important to AMG. Burstein's approval was required for sending invoices and purchase orders, and he typically approved between twenty-five and fifty percent of her invoices.

2

Fichter testified that during the three months she worked for Burstein, her duties required her to work only one hour per week. Some of AMG's administrative clerks (including Cercone), on the other hand, were required to work occasional overtime. Despite this, Cohen refused to permit her to assist her coworkers.

On August 31, 2009, Fichter told Ronald R. Zorn ("Zorn"), a senior management team member, that she was dissatisfied with her new position. She said she would look for new employment and asked him to be a reference. Zorn agreed. Alternatively, she asked whether she could work from home or be laid off. Zorn advised her that AMG's policy was not to lay off employees during the economic downturn.

On September 8, 2009, Cohen called a meeting with Fichter, indicating he had spoken with Zorn. He presented Fichter with a severance agreement. He never fired Fichter and she never clarified with him that she had been fired. Instead, she testified she believed the severance agreement to be an involuntary termination. She refused to sign it and came to work the following day. Fichter did, however, tell Cohen she wanted September 17, 2009 to be her last day in the office and September 30, 2009 to be her last day with AMG (using vacation time in the interim). Cohen agreed.

Fichter filed this lawsuit on March 23, 2010. The District Court granted AMG's motion for summary judgment on Fichter's gender discrimination and hostile work environment claims under Title VII and the PHRA, and Fichter filed this appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we exercise jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over an appeal

3

from a district court's grant of summary judgment. *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 369 (3d Cir. 2001). Summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "In making this determination, we must consider the evidence in the record in the light most favorable to the nonmoving party." *Jacobs Constructors, Inc.*, 264 F.3d at 369 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.

Fichter argues that the district court erred in granting AMG's motion for summary judgment. For the reasons stated below, we find that Fichter's claims for unlawful termination and gender discrimination due to hostile work environment are meritless and affirm the District Court's grant of AMG's motion for summary judgment.

### A. Employment Discrimination Claim

Fichter asserts parallel Title VII and PHRA claims of gender discrimination, which are analyzed using the same framework. *E.g.*, *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998). Title VII provides:

> It shall be unlawful employment practice for an employer--
>     (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1) (2012).[1]

---

[1] The PHRA provides, in pertinent part:
    It shall be an unlawful discriminatory practice . . .

Where no direct evidence of discrimination exists, we apply the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Initially, the plaintiff must establish a prima facie case of unlawful discrimination.[2] Then the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. This "relatively light" burden is met by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The burden of production then shifts to the plaintiff, who must show "by a preponderance of the evidence that the employer's explanation is pretextual." *Id.*

To defeat summary judgment "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. To establish the quantum of "some" evidence, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was

---

> (a) [f]or any employer because of the . . . sex . . . of any individual . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual . . . is the best able and most competent to perform the services required.

43 Pa. Cons. Stat. Ann. § 955.

[2] The District Court assumed, *arguendo*, that Fichter established a prima facie case.

either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.* (citation omitted).

To show pretext, the plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). The central factual issue is "whether discriminatory animus motivated the employer"; therefore, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken . . . [or was not] wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. Instead, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence . . . and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* (omission in original) (citation and internal quotation marks omitted).

Fichter fails to show that AMG's reasons for its employment decisions were pretextual. She argues that while no one employment action shows discrimination, the totality of the circumstances demonstrates that "Cohen systematically marginalized [her] and pushed her out." (Appellant's Br. at 12.) In so arguing, Fichter does not rebut AMG's proffered legitimate nondiscriminatory reasons; rather, she advances an alternative theory of AMG's actions. The Third Circuit expressly rejected this approach in *Kautz*. 412 F.3d at 469 n.2.[3] We maintain the Third Circuit's traditional analytic approach of carefully

---

[3] In *Kautz*, the plaintiff claimed pretext, arguing that his employer "decided to make him transfer to the other side of the country for the sole reason of getting him to quit." 412

considering each of the employer's proffered reasons and the plaintiff's respective claims of pretext. *E.g.*, *id.* at 466-67.

### 1. *Fichter's Reassignment to Burstein*

AMG first argues that it reassigned Fichter to assist Burstein because she was the best-qualified candidate. Fichter does not dispute this. Nor does she dispute the position's importance to AMG. Rather, Fichter argues that AMG's reason for reassigning her is pretextual because the position was a "waste of time" because previous assistants failed to make the position effective and "Mr. Burstein wasn't going to change." (Appendix ("App.") at 165.) But the disputed factual issue is "whether discriminatory animus motivated the employer"; Fichter cannot survive summary judgment by simply claiming that Cohen's "decision was wrong or mistaken . . . [or was not] wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.[4]

### 2. *Fichter's Lack of Work*

---

F.3d at 469 n.2. In response, the Court clarified the proper analysis: "In considering plaintiff's rebuttal after the employer has come forward with nondiscriminatory reasons, we are obliged to consider whether the employer's proffered reasons are pretextual *and not alternative theories advanced by the plaintiff.*" *Id.* (emphasis added). Fichter advances a nearly identical argument to the plaintiff in *Kautz*—that Cohen's employment decisions were pretext for a scheme to marginalize her and replace her with a male employee. This "alternative theory" is not responsive to AMG's proffered legitimate nondiscriminatory reasons for Cohen's employment decisions.

[4] Fichter also attempts to locate inconsistency and contradiction in the fact that Cohen and Burstein disagree over which of them first broached Fichter's reassignment. This conflict is immaterial. Fichter must present evidence that contradicts the "core facts" of AMG's proffered reason. *Kautz,* 412 F.3d at 467. AMG's core reasons for Fichter's reassignment are that the position was important and she was most qualified for it. Neither reason is contradicted by a conflict over whether Cohen or Burstein had the idea first.

AMG next explains that Cohen did not permit Fichter to take on extra work from other employees because (i) she needed to focus on her own work; (ii) she had difficulties with Cercone's software and he was better at the task; (iii) Cercone requested Fichter not interfere with his work; and (iv) other employees refused her help.

Fichter attempts to find implausibility in AMG's first reason because it is "incredulous" that management could remain unaware for three months that she was only working one hour per week. (Appellant's Br. at 13.) She notes that she did not have an office and "was apparently performing her work, or lack thereof, out in the open." *Id.* Fichter did not, however, inform management of her idleness. Moreover, this evidence does not implicate the relevant disputed factual issue—discriminatory animus. *Fuentes*, 32 F.3d at 765.

Fichter tries to undermine AMG's second reason by noting that she worked in her former position "without issue" throughout 2008, the year in which AMG began using the new software. (Appellant's Br. at 14.) The managerial function of allocating resources is a common business decision, and Fichter provides no evidence from which to conclude that Cohen was motivated by discriminatory animus. *See, e.g.*, *Kautz*, 412 F.3d at 467. Finally, Fichter's co-workers themselves rejected her offers to help, undermining Fichter's claim that Cohen orchestrated her marginalization.

### 3. Cercone's Hiring & Placement in Fichter's Former Position

Finally, AMG argues that it (i) hired Cercone to assist Fichter because she needed help with the workload; (ii) retained him in her position while she was on medical leave

8

because he was the "logical choice"; and (iii) retained him in her position when she was reassigned because he was better suited.

Fichter first claims "inconsistency" because she told Cohen she did not want or need help. As noted earlier, however, whether an employer's action is "wise, shrewd, prudent, or competent" is immaterial. *Fuentes*, 32 F.3d at 765. Fichter must show that discriminatory animus motivated the employer; she "must show, not merely that [AMG's] proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

Fichter fails to meet her burden. She agreed that Cohen, as her boss, was acting within the scope of his managerial duties. Moreover, Fichter testified that before Cercone was hired, she had "twice as much work" because her previous assistant had been reassigned. Indeed, Fichter assisted Cohen in interviewing candidates and ultimately selecting Cercone. Furthermore, the decision to assign some of Fichter's duties to Cercone is consistent with the fact that Fichter's workload had doubled, Cercone was hired to assist Fichter, and that Cohen expected Fichter and Cercone to share the work.

Fichter similarly has not sufficiently impugned AMG's remaining justifications. Fichter must contradict AMG's "core facts" for its decision. *Kautz*, 412 F.3d at 467. Fichter does not dispute that Cercone was the logical choice to replace her while she was on medical leave and when she was reassigned. She affirms AMG's belief that she was the most qualified candidate to work with Burstein.

9

In conclusion, Fichter fails to present "some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. The District Court properly granted AMG's motion for summary judgment on Fichter's employment discrimination claim.

## B. Hostile Work Environment Claim

Fichter also claims discrimination under Title VII and PHRA based on hostile work environment. To prove her prima facie case, Fichter must establish that "(1) [she] suffered intentional discrimination because of [her] sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). The hostility of a work environment must be determined by the totality of the circumstances. *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Such circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

To survive summary judgment, Fichter must present "sufficient evidence to give rise to an inference of discrimination by offering proof that her 'workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive

10

working environment,' . . . and the conduct [was] based on [her gender]." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 278–79 (3d Cir. 2001) (quoting *Harris*, 510 U.S. at 21).

### 1. Fichter's Claimed Discrimination Is Not Severe or Pervasive

Fichter cited multiple factors as evidence that Cohen created a hostile work environment, including: (1) telling her she should get a job closer to home, (2) telling her she was disrespectful if she disagreed with him, (3) telling her to turn more work over to Cercone, (4) wanting her work done more quickly so that Cohen's work was not held up, (5) asking Cercone, but not Fichter, to do work for him even though Cercone worked for Fichter, (6) reassigning a female employee who previously worked with her to another position and leaving her with twice the workload, (7) not giving her a raise in four to five years, (8) requiring that she advise him if she would be arriving late or leaving early, (9) asking her for information but leaving the office without telling her before she could provide it to him, (10) keeping track of her vacation time, (11) providing her with little notice when auditors were coming, (12) asking for her opinion, but doing what he wanted if he did not like her answer, (13) not compensating her when she filled in for Roy Rowe, and (14) not respecting the extra work she performed "unless it benefitted Brian Cohen."[5] (App. at 80–81.)

---

[5] We note the District Court did not discuss additional arguments made in Appellant's Opposition to Motion to Summary Judgment, to wit: (1) hiring a male employee (Cercone) over her objections that she did not need help; (2) reassigning Fichter during her medical leave to a "deadend position with minimal duties," meanwhile promoting Cercone to her previous position; (3) reassigning her to a position that required only one hour of work per week and refusing to permit her to help other employees with "abundant

As the District Court correctly concluded, many of these claimed hostile actions are well within the scope of common managerial functions. Fichter's preferences that Cohen advise her when auditors arrived, remain in the office when she was to report to him, and respect her extra work are not Title VII violations. Title VII does not "guarantee a utopian workplace." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 600 (6th Cir. 2007) (quoting *Vore v. Ind. Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994)).

When arguing that Cohen was more likely to take male advice, Fichter compares herself to males in higher positions who were not similarly situated. With respect to Cercone, she offers only conclusory allegations, which cannot survive summary judgment. *E.g.*, *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). Finally, "offhand comments, and [non-serious] isolated incidents" are not actionable under Title VII. *Abramson*, 260 F.3d at 280 (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788

work"; and (4) offering her a severance package after she expressed her dissatisfaction with her new position to Zorn. (Appellant's Opposition to Motion for Summary Judgment). "The court need not discuss every argument made by a litigant if an argument is clearly without merit." *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). Moreover, Appellant did not challenge on appeal the District Court's failure to discuss these additional facts, and has thus waived her claim. *E.g.*, *Society Hill Towers Owners' Assoc. v. Rendell*, 210 F.3d 168, 185–86 (3d Cir. 2000). Finally, to the extent that the District Court erred by not discussing the additional reasons under the totality of the circumstances, we find the court's error harmless. Even including these reasons, and for the reasons discussed herein, Fichter fails to survive summary judgment.

Similarly, on appeal, Fichter adds new facts to her hostile work environment claim: (1) Fichter objected to the reassignment to Burstein "such that Cohen would have known that it was an undesirable position"; and (2) Cohen refused to permit her to assist Cercone while she was idle and Cercone was busy despite having performed his position successfully. (Appellant's Br. at 16.) These facts are reflected in the record and fall within our de novo review; however, for reasons discussed in our opinion, Fichter's claim still fails to survive summary judgment.

(1998)). Similarly, Cohen's comments that Fichter was being disrespectful and should look for work closer to home are not Title VII violations.

The District Court correctly concluded that Fichter failed to show sufficient evidence from which a reasonable trier of fact could conclude she suffered "severe or pervasive discrimination due to her gender to the extent that it would alter the conditions of her employment." (App. at 19.)

### 2. *The District Court Considered the Totality of the Circumstances*

On appeal, Fichter argues the District Court failed to consider her claims under the required "totality of the circumstances" approach, instead considering each claim in isolation. The totality of the circumstances test requires courts to "evaluate the sum total of abuse over time" and prevents them from "consider[ing] each incident in a vacuum." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 149, 155 (3d Cir. 1999).

We find that the District Court did consider the totality of the circumstances as required by the hostile work environment analysis. *See* (App. at 19 ("After careful consideration of AMG's Motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, *and the record as a whole*, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Fichter on her claims of hostile work environment . . . ." (emphasis added)).) Nothing in the District Court's opinion suggests it did otherwise, and Fichter offers no support for her conclusory claim.

Rather, she claims that *if* the District Court had considered the totality of the circumstances, it would have seen that Cohen systematically pushed her out of her job

13

into an unproductive and humiliating position, and presented her with a severance agreement when she complained. The totality of the circumstances analysis does not require the District Court to cobble together unsubstantiated theories from otherwise innocuous facts. *See Podobnik*, 409 F.3d at 594 (explaining that to survive summary judgment a party must show more than just "bare assertions, conclusory allegations or suspicions" to show the existence of a genuine issue of material fact). The District Court's role—and ours—is to determine whether the record, considered as a whole, contains "sufficient evidence to give rise to an inference of discrimination by offering proof" that Fichter was subject to a hostile work environment because of her gender. *Abramson*, 260 F.3d at 278–79. Fichter asks us to make an "inference of discrimination" but fails to "offer proof" supporting such an inference.

## IV.

For the foregoing reasons, we will affirm the District Court's grant of AMG's motion for summary judgment.